**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EGYPT SAYLES,** ) | **CASE NO. 1:12CV0446** |
| ) | |
| Plaintiff, ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| v. ) | |
| ) | |
| **MICHAEL ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Egypt Sayles ("Sayles") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Sayles' claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

### I. Procedural History

On April 30, 2010, Sayles filed an application for DIB, POD, and SSI alleging a disability onset date of March 5, 2010, and claiming that she was disabled due to affective mood disorders and asthma.[1] (Tr. 66-67.) Her application was denied both initially and upon reconsideration. Sayles timely requested an administrative hearing.

On September 9, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Sayles, represented by counsel, and an impartial vocational expert ("VE") testified. On September 21, 2011, the ALJ found Sayles was able to perform a significant number of jobs in

---

[1] In April, 2008, based upon anxiety and personality disorders, Sayles applied for DIB and SSI. (Tr. 64-65, 70-76, 154-156.) Her application was denied and she did not appeal.

the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 20 at the time of her alleged disability onset date, Sayles is a "younger" person under social security regulations. (Tr. 15.) *See* 20 C.F.R. §§ 404.1563 & 416.963. Sayles has a high school education and past relevant work as a hairdresser, cashier, and fast food worker. *Id*.

### *Medical Evidence*

In October, 2007, Sayles began receiving mental health treatment at Murtis H. Taylor Multi-Service Center ("Murtis Taylor"). (Tr. 324, 327-328.) She was prescribed Zoloft for depression. (Tr. 328.) In April, 2008, Sayles reported that she stopped taking the medication after one month when she felt improvement, but returned to the clinic due to depression. (Tr. 325.) She was again prescribed Zoloft. *Id*.

In June, 2009, Sayles sought treatment at Murtis Taylor for her depression and mood swings. (Tr. 353.) She reported that she lived in transitional housing after being homeless for about a year. *Id*. Medical providers diagnosed major depressive disorder, severe, with psychosis, with atypical features; post-traumatic stress disorder; and a learning disorder, NOS. (Tr. 362.) Zoloft and Seroquel were prescribed. (Tr. 384.) At the July, 2009 appointment, Sayles reported doing well. (Tr. 383.) The medical provider reported that Sayles seemed happy, peaceful, relaxed, and was sleeping better without hallucinating. *Id*. She continued, however, to experience mood swings and paranoia when in public. *Id.*

In November, 2009, Sayles presented to Murtis Taylor after her symptoms returned when she stopped taking her medication. (Tr. 381-382.) After reporting that Seroquel helped her symptoms, it was prescribed again. (Tr. 381.) At her next appointment on December 14, 2009, Sayles reported no hallucinations or paranoia. (Tr. 380.) On December 28, 2009, a medical provider conducted a second mental status examination, resulting in a diagnosis of mood disorder, NOS. (Tr. 473-476.)

On March 31, 2010, Virginia M. Brennan, a licensed social worker, completed a Daily

2

Activities Questionnaire. (Tr. 386-392.) Ms. Brennan indicated that Sayles had poor ability to engage in "social interactions" and "interactions with authority." (Tr. 387.) She also noted that Sayles' concentration, judgment, hygiene, ability to follow instructions and program rules were "less than adequate." *Id*. Ms. Brennan did find, however, that Sayles had "adequate" persistence, memory, reliability, and "good" cooperation. *Id*.

After completing a Mental Status Questionnaire on April 26, 2010, Ms. Brennan diagnosed Sayles with major depressive disorder, with psychosis; post-traumatic stress disorder; and a learning disorder, NOS. (Tr. 395-396.) Ms. Brennan noted the following work-related mental capabilities:

- Due to problems with memory Sayles would not be able to follow instructions.
- [Sayles] has problems staying on task and gets easily distracted.
- [Sayles] does not trust others and is easily angered, which would cause problems in the work place.
- [Sayles] does not have the ability or skills to deal with the stress and pressures associated with day-to-day work activity.

(Tr. 396.)

On September 20, 2010, Richard N. Davis, a clinical psychologist, conducted a consultative examination. (Tr. 445-451.) He diagnosed Sayles with alcohol dependence, continuous; adjustment disorder with mixed disturbance of emotions and conduct; and, lower borderline functioning capabilities overall. (Tr. 450.) Mr. Davis found Sayles markedly impaired in her ability to relate to others, to maintain attention, concentration, and persistence, and to deal with stress and pressure. (Tr. 451.) He found Sayles no more than moderately impaired in her ability to understand, remember, and follow simple instructions. *Id.* He also found her incapable of effectively managing money. *Id.*

On September 30, 2010, Irma Johnston, Psy.D., a state agency reviewing psychologist, found that Sayles' mental impairments did not meet the requirements of Listings 12.04 (Affective Disorders) or 12.09 (Substance Addiction Disorders). (Tr. 452, 455, 460.) Dr. Johnston found Sayles to have moderate restrictions of activities of daily living; moderate

3

difficulties maintaining social functioning; and, moderate limitations in concentration, persistence, or pace. (Tr. 462.) On the same day, Dr. Johnston completed a Mental Residual Functional Capacity Assessment form indicating that Sayles was markedly limited in one area – her "ability to interact appropriately with the general public." (Tr. 467.) Otherwise, Dr. Johnston found Sayles to be moderately limited in the following abilities:

- understand and remember detailed instructions, carry out detailed instructions.

- maintain attention and concentration for extended periods.

- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.

- work in coordination with or proximity to others without being distracted by them.

- complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.

- accept instructions and respond appropriately to criticism from supervisors.

- respond appropriately to changes in the work setting.

- set realistic goals or make plans independently of others.

(Tr. 466-467.) Dr. Johnston addressed Mr. Davis' report finding Sayles to be markedly limited in three areas as follows:

> Current CE was conducted on 9-20-10. She rode the bus to the exam. Dx: Alcohol Dependence, Adjustment Disorder, and BIF. The diagnosis of BIF is not accepted, as the evidence indicates that she has difficulty with concentrating and focusing but has an average intelligence. She was able to graduate from Life Skills, and she passed the driver's license test. At the CE, her grooming was adequate, she was cooperative. She reported having anger problems. She reported having had suicidal thoughts but no set plan. The examiner found marked limitations in all work related areas except for her ability to understand and recall information, which he found to be moderately limited. Some weight is given to these findings. The diagnoses are consistent with other evidence, except for the diagnosis of BIF, which is not supported. The findings of marked limitation[s] are not accepted, as claimant has no history of periods of decompensation or of psych IP treatment. She has been able to work in many capacities, and the treatment [at] MER indicates that she has also worked "under the table". She is able to secure housing for herself, staying with others or in a shelter. She is no longer on probation. She was able to graduate from high school and received some voc training. Moderate limitations are appropriate.

(Tr. 468-469.)

On March 28, 2011, Karen Steiger, Ph.D., a state reviewing psychologist, affirmed Dr.

4

Johnston's opinion.  (Tr. 483.)

### *Hearing Testimony*

At the hearing, Sayles testified to the following:

- She lives with her one-month old son in subsidized housing.  (Tr. 29-31.)  However, since the baby was born, she spends a lot of time at her mother's residence.  (Tr. 49-50.)

- Her mother and sister help care for the baby.  (Tr. 31-32.)

- She has a driver's license, but does not drive.  (Tr. 32-33.)

- In 2008 she graduated from high school, completing her education through an alternative education program called Life Skills.[2]  (Tr. 27, 33.)

- She reads at a fifth grade level.  (Tr. 34.)

- She has had no vocational training.  (Tr. 33.)  She has used a computer, but only at school.  She does not have a computer at home.  (Tr. 35.)

- She is able to add and subtract and handle small dollar amounts at the store, such as $5.  (Tr. 35-36.)  Her case manager helps her with grocery shopping.  (Tr. 36.)

- In 2008, she was convicted of check forgery and spent about a month in jail.  (Tr. 44-45.)  She was also convicted of disorderly conduct after getting into a fight at a restaurant and causing damage.  (Tr. 45.)

- She worked briefly as a cashier and as a health care sitter for seniors, which position she obtained through a temporary agency.  (Tr. 28, 37.)  In October, 2010, she was fired from the sitter position after she "went off" on a security guard.  (Tr. 37.)

- In 2008 and 2009 she earned up to $8,000 per year "doing hair" and selling handbags.  (Tr. 38-39.)

- She is unable to work due to mental health issues – she hallucinates (sees black shadows) and talks out loud to herself.  (Tr. 45, 53.)

- During a typical day, she does not get any sleep, but she is so tired from her medication.  (Tr. 49.)  The baby cries a lot.  *Id*.  When she gets time to herself, she smokes, typically a pack a day.  *Id*.  Other than seeing her case manager about once a week, she does nothing else.  (Tr. 50.)  She is paranoid that something will happen to her if she goes outside.  (Tr. 50-51.)

- She takes her medication two times daily which helps, but it makes her sleepy and jittery.  (Tr. 46.)

---

[2]Prior to that she was enrolled in special education classes in the Cleveland Public Schools.  (Tr. 27, 312.)

After the VE described Sayles' past work, the ALJ posed a series of hypotheticals as follows:

> The first hypothetical I want you to assume an individual that has the same age, education and work experience of the claimant; further assume this individual has no physical impairments or physical limitations.
>
> The individual can work simple, routine, repetitive tasks in a stable environment. Would have frequent contact with the general public; no work involving quotas or fast paced work and would be off task five percent of the time. Could this hypothetical person perform any of the past work of the claimant?

(Tr. 59-60.) The VE testified that this hypothetical person could perform work as a cashier, as well as other jobs including a laundry worker, a wire worker, or electronics worker. (Tr. 60.)

The ALJ's second hypothetical restricted the hypothetical individual to "just occasional contact with the general public." (Tr. 61.) The VE testified that the cashier position would be eliminated, but the other three jobs would remain. *Id.*

On cross-examination, counsel added a "frequent supervision" restriction to the ALJ's second hypothetical. *Id.* The VE testified that with such a restriction no jobs would be available without special accommodations. *Id.* Counsel next inquired whether any jobs would be available if, without considering the supervision restriction, the individual was off-task fifteen percent of the time. (Tr. 61-62.) The VE testified that there would be no jobs. (Tr. 62.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

---

[3]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Sayles was insured on her alleged disability onset date, March 5, 2010, and remained insured through June 30, 2011. (Tr. 9.) Therefore, in order to be entitled to POD and DIB, Sayles must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Sayles established a medically determinable, severe impairment, due to depression; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Sayles was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for the full range of work at all exertional levels with some nonexertional restrictions. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Sayles was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

7

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

### VI. Analysis

*Listing 12.04*

8

Sayles asserts that the ALJ erred in his Step Three analysis in finding that her mental impairments did not meet or equal Listing 12.04. (Doc. 10 at 4-7.) Specifically, she argues that the ALJ unfairly minimized the evidence as it relates to the paragraph B criteria of that Listing. *Id*. Sayles also asserts that the ALJ failed to consider the totality of the evidence, including her antisocial and violent behavior. *Id*.

For a claimant to show that her impairment equals an impairment in the Listings, she must meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). In this case, substantial evidence supports the ALJ's conclusion that Sayles does not have an impairment or combination of impairments that meets or medically equals Listing 12.04.

> Listing 12.04 describes affective disorders and provides, in relevant part:
>
> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or
>
> i. Hallucinations, delusions, or paranoid thinking ...
>
> * * *
>
> AND

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration[.]
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

The ALJ determined that Sayles' mental impairment did not meet or medically equal the criteria under paragraph B as follows:

> In activities of daily living, the claimant has moderate restriction. The claimant can drive and take public transportation. (exh. 15F p1) Her grooming and clothing are average and appropriate. (exh. 15F p3, 20F) The claimant can prepare simple meals. (exh. 14E p3) The claimant does lack in certain life skills, such as money management and shopping. (exh. 11F pp5,6)
>
> In social functioning, the claimant has moderate difficulties. The claimant alleges severe anger issues, but is consistently cooperative with treating sources. (exh 20F p10) She stays with friends. (exh 11F p6) She had a boyfriend. (exh. 20F p7)
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant alleges difficulty following even a one-hour television show. (exh 11F p5) Cognitive testing by an intake nurse showed that she could perform four serial sevens, calculate change, and had normal memory. (exh. 20F p4) The claimant's caseworker likewise reported fair ability to concentrate, and could recall four out of seven objects. (exh. 13F pp5,7)
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

(Tr. 12.) The ALJ concluded that because there were not at least two marked limitations or one

marked limitation together with repeated episodes of decompensation, the paragraph B criteria were not satisfied. *Id*. The ALJ also considered that the paragraph C criteria were not applicable as there was no history of decompensation or even a suggestion that such was likely. Additionally, the ALJ found that Sayles was able to live independently. (Tr. 12-13.)

As to the paragraph B finding, Sayles asserts that the ALJ ignored the assessment of Richard N. Davis, a clinical psychologist who consultatively examined Sayles at the request of the agency. Mr. Davis found Sayles to be markedly limited in her ability to: (1) "relate satisfactorily to others;" (2) "maintain attention, concentrate, persist at something and perform at it with any reliability;" and (3) "deal with stress and pressure." (Tr. 451.) Sayles contends that this evidence along with her hearing testimony and other evidence of record demonstrates that she meets the paragraph B criteria. For example, as to activities of daily living, Sayles testified that she was dependent upon her mother and that she is unable to shop without the assistance of her case worker. Regarding social functioning, Sayles contends that the ALJ ignored evidence that she was distrustful of others and suffers from paranoia in public. Specifically, Sayles asserts that the ALJ did not discuss the incident when she was arrested at a restaurant for losing her temper and damaging the store, nor the time she threw a television and broke a window at her mother's home. (Doc. No. 10 at 6.) Relating to maintaining concentration, persistence, or pace, Mr. Davis, as well as an earlier consulting psychologist,[4] found her to have marked limitations in this functioning area.

The ALJ, however, did consider Sayles's hearing testimony and reasonably concluded that she was not credible as follows:

> The claimant testified at the hearing that she cannot work due to depression. She lost many jobs due to fighting and arguing with coworkers and supervisors. Her medications make her sleepy. She testified at the hearing that she hears voices telling her to kill her case manager, and has full blown conversations with herself.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's

---

[4]For Sayle's prior disability claim, David V. House, Ph.D., Psychologist, conducted a clinical interview for the state agency, finding her concentration and attention to be "moderately to markedly limited due primarily to post traumatic stress and anxiety issues." (Tr. 332.) In all other areas, Dr. House found her to be mildly to at least moderately limited. (Tr. 332-333.)

> medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> * * *
>
> The claimant's allegations are given little weight, as they are not credible. She testified to symptoms far in excess of any reported to a treating source, going from whispered voices to command hallucinations. This could be related to the abrupt stop to treatment after December of 2010, as the record shows that she improves with treatment, and that hallucinations occur when she stops taking her medication. The claimant alleges severe attitude and anger issues, but there is no record of any psychotherapy for that. The limited treatment by the claimant does not support her allegations. In addition, she has friends and at least at one point had a boyfriend, yet testified to severe difficulties relating to others. Finally, the claimant alleges that she cannot use a computer, but the record shows that she used a computer to forge checks. (exh. 15F p3)

(Tr. 13-15.)

Furthermore, the ALJ relied upon the state agency examining physicians' opinions in formulating the RFC. (Tr. 15.) The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527 & 416.927. As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); SSR 96-2p. It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear. 20 C.F.R. §§ 404.1527(d) & 416.927(d).

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. §§ 404.1527(f) & 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20

C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another. *See Kornecky*, 167 Fed. App'x 496, 508 (6th Cir. 2006). The *Kornecky* Court found that:

While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

The ALJ addressed Mr. Davis' opinion as follows:

> The claimant did see Richard Davis, MA, licensed psychologist, for a consultative examination on September 20, 2010. Mr. Davis reported that the claimant seemed very limited intellectually, and discussed her poor attitude, but did not actually display any abnormal behavior. (exh. l5F p5) She did reported [sic] suicidal thoughts, and based on this he assigned a GAF score of 45. He diagnosed the claimant with adjustment disorder with mixed disturbance of emotions and conduct, which is consistent with her treatment for depression. (exh. l5F p6) He opined that the claimant would be markedly limited in many workplace functions. This opinion is given little weight as it is inconsistent with the progress notes from treating sources, which show improvement with medication, good mood, and denials of suicidal ideation. (exh. 20F p9) As Mr. Davis's opinion is based off of symptoms that inconsistent [sic] with those reported to treating sources, it is given little weight.

(Tr. 14.)

Here, the ALJ ascribed only partial weight to Mr. Davis' opinion as the ALJ found it

13

inconsistent with the Murtis Taylor progress notes, which "showed improvement with medication, good mood, and denials of suicidal ideation." (Tr. 14.) Furthermore, the record reflects that Dr. Johnston found that Mr. Davis' marked limitations were not supported as Sayles was able to work in many capacities, as well as able to work "under the table." (Tr. 469.) Dr. Johnston further found that although Sayles has severe mental impairments, she received counseling and medication, and that her functioning would likely improve with sobriety. *Id*. In particular, Sayles testified that she "did hair" – she was able to use a flat iron and deal with the people while doing so. In addition, Sayles testified that she sold handbags to local beauty shops. This is an indication that she is able to deal with people to a greater extent than she claimed in her testimony. Substantial evidence supports the ALJ's conclusion that Sayles had no more than moderate difficulties in maintaining concentration, persistence or pace.

More importantly, there are no treating records indicating that Sayles would be unable to work because of her psychological condition. Though there is a medical opinion confirming Sayles' diagnosis of depression, as acknowledged by the ALJ by finding it to be a severe impairment, Sayles must also show that the condition is of such a severity as to be disabling. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Here, no doctor reported that Sayles' depression limited her work abilities. *See Bartyzel v. Comm'r of Soc. Sec*., 2001 WL 1681118, *8 (S.D. Ohio Sept. 28, 2001) ("Although the record reflects a diagnosis of fibromyalgia, the mere diagnosis of a condition is not tantamount to an opinion of disability.") *See also Hoopai v. Astrue*, 499 F.3d 1071, 1076–77 (9th Cir. 2007) (holding that a diagnosis of "moderately significant forms of depression" and moderate limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, complete a normal workday and workweek without interruption from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods did not preclude a finding of nondisability); *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002) (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" as well as a "marked limitation in

her ability to maintain concentration over extended periods" could perform the unskilled jobs identified by the vocational expert).

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416 .912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011). Sayles has not produced evidence demonstrating that she met Listing 12.04.

The ALJ's conclusion as to each of the paragraph B criteria is supported by substantial evidence.

### *Medical Expert*

Sayles contends that the ALJ erred in not requiring testimony from a medical expert. (Doc. No. 10 at 7-9.) She asserts that a medical expert was necessary because after the ALJ rejected Mr. Davis' opinion of three marked limitations, the ALJ should have obtained an expert's opinion as to whether Sayles' impairments met or equaled a listing. She contends that by not doing so, the ALJ acted as a medical doctor substituting his own opinion.

Pursuant to HALLEX 1-2-5-34[5], an ALJ is authorized to obtain a medical expert's opinion when, for example:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ is determining the claimant's RFC, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record.

Sayles acknowledges that it is within the ALJ's discretion to determine if medical expert testimony is necessary. "20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony, stating that ALJs 'may ... ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)....'" *Simpson v. Comm'r of Soc. Sec.*, 2009 U.S. App. LEXIS 19206 (6th Cir. Aug. 27, 2009) (*citing Davis v. Chater*, 1996 U.S. App. LEXIS 33614, at *6 (6th Cir. Dec. 19, 1996)); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) *citing* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.") (emphasis added); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). HALLEX does not, for the most part, alter this general rule. *See Griffin v. Astrue*, 2009 WL 633043, at *10 (S.D. Ohio Mar. 6, 2009). Moreover, federal courts have concluded that failure to follow exact procedures set forth in HALLEX does not require reversal absent a convincing showing of prejudice to the plaintiff. *See Kendall v. Astrue*, 2010 WL 1994912, *4 (E.D. Ky. May 19, 2010); *Newton v. Apfel*, 209

---

[5]The HALLEX Manual contains instructions used by employees of the Social Security Administration in processing and adjudicating claims at the hearing, Appeals Council review, and civil action levels of appellate review. *See* HALLEX, § I-2-5-34.

16

F.3d 448, 459–460 (5th Cir. 2000) (If prejudice results from a violation of HALLEX, the proceedings are tainted and the result cannot stand.); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981) (same); *Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir. 1989) (*citing* 20 C.F.R. § 416.1444) (An ALJ abuses his discretion by failing to consult a medical expert only when the testimony of such an expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations.")

Here, the state agency physicians, after reviewing the record, found that no listing was met or equaled. As state agency physicians are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," their opinions that a claimant does not meet or equal a listing may be adopted by the ALJ. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i). The ALJ did not commit error by declining to solicit the testimony of a medical expert. Moreover, Sayles has not shown that she was prejudiced as the ALJ conducted a full inquiry of Sayles at the hearing and thoroughly discussed the record in his decision.

### *RFC Analysis*

Sayles asserts that the RFC determination is not consistent with the evidence. (Doc. No. 10 at 9-10.) Specifically, Sayles contends that the ALJ did not articulate how Sayles would be off-task only five percent of the time. *Id.* Instead, Sayles asserts that the ALJ should have found that she would be off-task fifteen percent of the time. *Id.*

The Court finds that the ALJ did not arbitrarily assign the five percent off-task figure. The RFC assessment is an administrative finding, not a medical opinion. SSR 96-5p, 1996 WL 374183. The RFC is based upon all the relevant evidence, including the medical records, medical source opinions, and the claimant's subjective allegations and description of her own limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). Furthermore, moderate functioning regarding concentration, pace and persistence is generally regarded to being off-task five percent of the workday. *See McNalley v. Comm'r of Soc. Sec.*, 2011 WL 7445517 (N.D. Ohio Dec. 15, 2011) (ALJ found moderate limitations in maintaining concentration such that the claimant would be off task 5% of the time); *cf. Evitts v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 138393 (Jun. 29, 2012) (Court cannot *post hoc* define "moderate" as between 25% and 50%

17

when claimant was found to be moderately limited in concentration."). As the ALJ found Sayles to be moderately limited in concentration, persistence, and pace, the ALJ reasonably found her to be off-task five percent of the workday.

The Court finds that there is substantial evidence supporting the ALJ's findings.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Date:  November 20, 2012